UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KELLY M. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 2:20-CV-73-PPS |
| ) | |
| ANDREW M. SAUL, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

Kelly Taylor seeks judicial review of the Social Security Administration's decision to deny her disability insurance benefits that she alleges began on June 30, 2014. Following a hearing and subsequent decision by an Administrative Law Judge (ALJ) on March 19, 2019 that Taylor was not disabled, she requested Appeals Council review. The Appeals Council remanded the case for a second hearing which was held on July 8, 2019. After a new hearing, a different ALJ once again found that Taylor was not disabled within the meaning of the Social Security Act and that she had the residual functional capacity (RFC) to perform sedentary work with some restrictions.

Taylor suffers from numerous medical issues including arrhythmia, arthritis, a seizure disorder, a spine disorder, fibromyalgia, and syncope. [Tr. 31.][1] During the July

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 16. The Commissioner of Social Security filed another certified administrative record at DE 19, which is the record divided up as several smaller files to facilitate access for opposing counsel, but substantially the same as the previous record filed. [*See* DE 20.] I will cite to the administrative record at DE 16 since this is a comprehensive document and contains descriptions of the types of files on the left side.

2019 hearing, Taylor testified that she stopped driving due to her seizures, she faints sometimes multiple times in one day, she has twelve current doctors, and she suffers from migraine headaches daily so that she typically spends most of the day in bed. [Tr. 61, 66-67, 72, 74, 77.]

Taylor challenges the ALJ's decision on three grounds, but I will focus my attention on her first argument, which is how the ALJ assessed the opinions of Taylor's treating physician, cardiologist Dr. Abdul Kawamleh. Because I find the ALJ's analysis of the medical opinion evidence is flawed, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Discussion

First, let's consider the legal foundation that governs how I have to look at this case. My role is not to determine from scratch whether or not Taylor is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not particularly demanding. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Of course, there has to be more than a "scintilla" of evidence. *Id.* This means that I cannot "simply rubberstamp the Commissioner's

decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

      The ALJ found that Taylor had the severe impairments of arrhythmia, arthritis, a seizure disorder, a spine disorder, fibromyalgia, and syncope. [Tr. 31.] Due to her history of heart arrhythmia, seizures, and syncopal episodes since 2013, Taylor underwent pacemaker implantations. [Tr. 35.] The ALJ determined that Taylor had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch, and crawl.  She can never climb ladders, ropes, and scaffolds, never work in extreme cold or humidity and wetness, never work at unprotected heights, never around dangerous machinery with moving mechanical parts, and never operate a motor vehicle as part of her work-related duties.  Every 60 minutes, she must be allowed to shift positions or alternate between sitting and standing for one to two minutes at a time while remaining on task.  Due to medication side effects, she is limited to simple work-related decisions and simple, routine tasks with no assembly line work or strictly enforced daily production quotas.

[Tr. 34.]  Additionally, the ALJ found that Taylor could not perform her past relevant work as a store manager and as a restaurant cook, but she could perform occupations such as a packer, assembler, and inspector. [Tr. 37-38.]

      In analyzing whether Taylor's RFC is proper, my focus will be on the ALJ's handling of the examining source opinion of Dr. Abdul Kawamleh, Taylor's treating

3

cardiologist. Taylor had a long term treating relationship with Dr Kawamleh, who first saw her in 2013. [Tr. 2329.] Dr. Kawamleh treated Taylor at least until May 21, 2019 (which is the latest report from Dr. Kawamleh in the record), and he is possibly still her treating physician. [Tr. 3100-05.]

The regulations require ALJs to give more weight to opinions from medical sources who have examined and have a treating relationship with the claimant. *See* 20 C.F.R. § 404.1527(c)(1) and (2).[2] A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2); *see also Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). An ALJ is free to discount the treating physician's opinion, but he must provide "good reasons" to explain the weight given to the opinion and support these reasons with evidence. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

This is what the ALJ said about Dr. Kawamleh:

> The opinion of Abdul Kawamleh, M.D. (Exhibits 28F; 40F; 57F) is also given some weight. As one of the claimant's treating physicians, Dr. Kawamleh had regular and personal contact with the claimant on which to base his opinions. However, this doctor did not support his conclusions with an explanation of the evidence relied on or address why the claimant could not sit for more than a total of four hours. Further, his conclusions, including the opinion that the claimant needed to sit with her feet elevated, are

---

[2] Based on the date of Taylor's application, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting the treating physician rule applies only to claims filed before March 27, 2017).

4

> inconsistent with his own treatment records. As explained above, the claimant was frequently neurologically intact, with normal motor and sensory function in her lower extremities (Exhibits 2F: 4F: 6F: 9F: 13F: 26F: 27F: 30F: 35F: 39F: 42F-46F; 50F). Further, she routinely had no cyanosis, clubbing, or edema in her extremities (Exhibits 2F: 3F: 6F: 9F: 11F: 13F: 19F: 26F: 30F: 34F: 35F: 39F: 43F-46F; 49F; 51F; 55F).

[Tr. 36.]

Let's dissect this. First, the ALJ says the opinion of Dr. Kawamleh is given "some weight" but it isn't entirely clear what opinions the ALJ has adopted, which ones he has rejected, and why. Digging deeper, the ALJ refers to three opinions made by Dr. Kawamleh (Exhibits 28F, 40F, and 57F). The first (Exhibit 28F) actually encompasses three treating source statements dated December 6, 2016, May 18, 2015, and October 10, 2014. [Tr. 1845-47.] All three diagnose Taylor with syncope, and either seizures or arrhythmia. [*Id.*] In the most recent statement, Dr. Kawamleh opined that Taylor was totally unable to participate in training activities/employment due to physical or mental limitations, and that this was a permanent condition. [Tr. 1845.] Dr. Kawamleh's medical diagnosis was seizures and syncope. [*Id.*]

The second opinion referred to by the ALJ [40F] is a cardiac/chest pain questionnaire from Dr. Kawamleh dated August 1, 2017. [Tr. 2329.] Here, Dr. Kawamleh indicates he has treated Taylor since 2013, she has recurrent syncope, her symptoms are chest pain, fatigue, weakness, blurred vision, and palpitations, Taylor is incapable of even low stress jobs, Taylor's cardiac symptoms are severe enough to frequently interfere with attention and concentration, she could not sit for more than 2

5

hours in a day and could only stand/walk less than 2 hours in a day, and with prolonged sitting, her legs should be elevated. [Tr. 2329-34.]

The third opinion cited by the ALJ [57F] is another questionnaire completed by Dr. Kawamleh on May 21, 2019. Like the questionnaire in 2017, this one diagnoses Taylor with recurrent syncope, the same symptoms, states she is incapable of even low stress jobs, she can sit about 2 hours total in an 8-hour working day and stand/walk less than 2 hours, with prolonged sitting Taylor's legs should be elevated 50% of the time, she would likely be absent more than 4 days per month, and notes that her medications may cause visual side effects and weakness. [Tr. 3100-05.]

For both of the two questionnaires, Dr. Kawamleh answered "see records" to the following question: "[i]dentify the clinical findings, laboratory and test results which show your patient's medical impairments." [Tr. 2329, 3100.] This seems to be the ALJ's main fault with Dr. Kawamleh's opinions – that he did not specifically support his conclusions with an explanation of the evidence relied on or specifically address why Taylor could not sit for more than a total of 4 hours. [Tr. 36.] Is this a "good reason" to discount Dr. Kawamleh's opinions? I don't think so. And here is why.

First of all, these are short questionnaires that the cardiologist was completing. I'm not sure what level of detail could be achieved even if Dr. Kawamleh did answer more specifically. Second, the ALJ does not cite to any competing evidence in the record to support the opposite conclusion - that Taylor *can* sit for more than 4 hours in a work day. Third, Dr. Kawamleh had been seeing Taylor for many years when he

6

completed the questionnaires. It isn't surprising to me on these two questionnaires that he does not point to a specific document in his records that supports his conclusions. Just glancing at the administrative record in this case shows that Dr. Kawamleh's treatment notes from 9/3/13 – 10/3/14 span 150 pages [3F]; treatment records from 9/8/14 – 3/10/15 are 125 pages in length [11F]; office treatment records dated 4/15/15 – 6/23/15 span 81 pages [19F]; progress notes from Dr. Kawamleh from 12/10/15 – 6/13/17 are 88 pages [34F]; and medical evidence dated 9/19-17 – 1/15/19 is 80 pages [49F]. This is a morass of paperwork in the record alone (and Dr. Kawamleh's personal records are probably even more extensive). Some of these medical records consist of pages and pages of heart rate monitoring. Therefore, I'm not sure if it is fair to criticize Dr. Kawamleh's opinions on the two questionnaires because he did not cite supporting evidence in the record. Dr. Kawamleh generally indicated his answers were based on his records, which, frankly, seems sufficient to me.

But the biggest problem of all with the ALJ criticizing Dr. Kawamleh's opinions is that the ALJ did precisely the same thing that he accused the doctor of doing: making conclusory statements unsupported by evidence. In other words, the ALJ criticized Dr. Kawamleh for failing to specifically identify clinical findings or laboratory tests supporting his opinion. Yet the ALJ did the same thing in his rejection of Dr. Kawamleh: he gave no reasons for discounting Dr. Kawamleh's opinions. The ALJ does not specifically cite evidence to the contrary in the record that Taylor could sit for more than a total of 4 hours. As a result, the ALJ did not create a logical bridge between the

7

evidence and his conclusions and did not provide enough evidence for me to meaningfully review his conclusions. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (ALJ must provide sufficient detail in analysis to allow a court to trace the path of their reasoning); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (ALJ must explain how unfavorable evidence is more probative than favorable evidence). The ALJ has not cited to evidence that supports his decision to discount Dr. Kawamleh's opinion about Taylor's RFC, and this error requires remand. *See Smith v. Berryhill*, 3:17-cv-261, 2018 WL 4357129, at *6 (N.D. Ind. Sept. 13, 2018) (faulting ALJ for not identifying "specific inconsistences" leaving the court unclear as to how physician opinion is inconsistent, finding "the ALJ has not cited to evidence that supports with sufficient clarity his decision to discount [treating physician's] opinion about [claimant's] RFC.").

There is evidence in the medical record to support Dr. Kawamleh's opinions about the duration of sitting and standing that Taylor could do in a given day. Dr. Kawamleh's opinion is consistent with his treating notes in 2014, 2015, and 2016 which diagnosed Taylor with syncope and seizures, and opined in 2016 that they were permanent conditions, disallowing her to complete any type of employment activity. [Tr. 1845-47.] Dr. Kawamleh wrote in October 2014 that Taylor "has frequent syncopal episodes" as well as heart arrhythmia. [Tr. 1847.] In 2015, Dr. Kawamleh also noted Taylor "has frequent syncopal episode" as well as arrhythmia. [Tr. 1846.] Additionally, other evidence in the record shows that Taylor had a motor vehicle accident due to seizures in June 2015, and that she had poor balance and suffered from migraines,

depression and anxiety. [Tr. 1838-40.]

The ALJ also dismissed Dr. Kawamleh's opinion that Taylor would have to keep her feet elevated while sitting because, according to the ALJ, it was inconsistent with the physician's own treatment records. [Tr. 36.] Although the ALJ then lists a whole slew of exhibits which encompass hundreds of pages, he does not point to any direct inconsistences with Dr. Kawamleh's treatment records. The Seventh Circuit has found that even when there are purported "inconsistenc[ies]" between an RFC opinion and other treatment notes, it is often "splitting hairs unfairly" where a physician's treating notes failed to state one thing, but the RFC questionnaire does so. *Stage v. Colvin*, 812 F.3d 1121, 1126 n.1 (7th Cir. 2016). In other words, it isn't surprising that Dr. Kawamleh's ongoing treatment notes spanning years of examinations do not specifically state that Taylor should keep her feet elevated, but that when drafting a medical opinion about her ability to work, Dr. Kawamleh did include this restriction. Courts have repeatedly pointed out the difference between a physician's progress notes for purposes of treatment and an ultimate opinion as to the plaintiff's ability to work. *See, e.g. Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 735 (11th Cir. 2017) ("[m]edical opinions are statements from physicians and other medical sources that reflect judgments about the nature and severity of the claimant's impairments, including both symptoms and resulting limitations."); *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008) (finding treatment notes not necessarily contradictory to a physician's assessment because one was describing the patient's condition at the time of

9

examination, and the other reflected the physician's assessment of the claimant's ability to function in a work setting); *Orn v. Astrie*, 495 F.3d 625, 634 (9th Cir. 2007).

Moreover, one of the impairments the ALJ found severe in Taylor was fibromyalgia. It is well established that there are no laboratory tests for the presence or severity of fibromyalgia, and that its symptoms are subjective. *See Holstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 769 (7th Cir. 2010) (because no objective tests exist for fibromyalgia, the plaintiff need not "prove her condition with objective data."). The Commissioner has admonished adjudicators to be aware "the symptoms and signs of FM (fibromyalgia) may vary in severity over time and may even be absent on some days," and the importance of considering longitudinal records reflecting ongoing medical evaluation and treatment from medical sources. *See* SSR 12-2p, 2012 WL 3104869, at *5 (July 25, 2012). Dr. Kawamleh himself opined in the questionnaires that Taylor's impairments were likely to produce "good days" and "bad days." [Tr. 2333, 3104.] But when the ALJ cited to a whole general list of medical evidence which supposedly contradicted Dr. Kawamleh's opinion that Taylor would need to keep her legs elevated while sitting, the ALJ failed to take into consideration Taylor's relatively normal findings at some medical examinations, and her long time physician's opinion that she was going to have some good days and some bad days. *See Austin v. Berryhill*, No. 17-cv-3113, WL 4275925, at *1 (C.D. Ill. Sept. 7, 2018) (adopting recommendation to reverse and remand, where the ALJ did not "adequately consider[] the waxing and waning effect of Plaintiff's fibromyalgia . . . .").

10

To the extent the ALJ found that the opinion about elevating her legs contradicted Dr. Kawamleh's own treatment notes, the ALJ ignored significant evidence in the record where other medical providers (as well as Dr. Kawamleh) noted problems going from sitting to standing, symptoms of swelling, migraines, dizziness, blurred vision, joint swelling, flushing, nausea, episodes of syncope, slurred speech, balance issues, dropping things, persistent slow heart rates, paresthesias, muscle weakness, abdominal pain, muscle spasms, fatigue, sensory disturbances, headaches, back pain, chest pain, palpitations, hypertension, insomnia, weight gain and loss, anxiety, and insomnia. [Tr. 882, 2410, 3111, 477-78, 783-85, 881-85, 1110-1111, 1478, 1480, 1568, 1702, 1776-79, 1868, 2005, 2126, 2265, 2410-13, 2441, 3111.]  It seems to make perfect sense that a person like Taylor, who suffered from seizures and syncopes, and testified that she fainted oftentimes more than once a day, would choose to have her feet elevated.

Aside from the "good reasons" requirement, in addition, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations *require* the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (emphasis added) (citation omitted); *Mueller v. Astrue*, 493 F. App'x 772, 776-77 (7th Cir. 2012) (remanding ALJ decision that did not consider the checklist of factors). The ALJ was required to address these factors and articulate how they impacted his decision.  *Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018) ("ALJs must evaluate a

11

treating physician's noncontrolling opinion by considering the treating relationship's length, nature, and extent; the opinion's supporting explanation and consistency with other evidence; and any specialty of the physician."). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' [his] reasons." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

In this case, the ALJ does mention that Dr. Kawamleh had regular and personal contact with the claimant, but he does not mention any of the other aforementioned factors in his assessment. [Tr. 36.] An ALJ is not necessarily required to explicitly state how they weighed each factor in their opinion, as long as his decision makes clear those factors were considered. *Schreiber v. Colvin,* 519 F. App'x 951, 959 (7th Cir. 2013). But here, it is unclear whether the ALJ weighed factors such as the nature and extent of the treating relationship between Dr Kawamleh and Taylor, or the types of tests performed. The ALJ failed to discuss Dr. Kawamleh's specialty as a cardiologist, and that he had treated Taylor since 2013. Dr. Kawamleh actually performed the operation when Taylor was fitted with a pacemaker in 2016 and has treated Taylor for her episodes of syncope and seizures. [Tr. 1911, 1917, 1922.] Dr. Kawamleh also used the LINQ monitor pacemaker device he inserted to confirm seizure activity, and to observe when Taylor was fatigued. [Tr. 1925-27.] And as discussed earlier, there is evidence in the medical record to support Dr. Kawamleh's opinions that the ALJ seemingly rejected. "Since the

12

ALJ does not indicate that he evaluated these factors, [a reviewer] is unable to assess whether the ALJ properly assigned minimal weight to the treating physicians' opinions. Accordingly, a remand is necessary . . . ." *Barbarigos v. Berryhill*, No. 17 C 3234, 2019 WL 109373, at *11 (N.D. Ill. Jan. 4, 2019).

Because of the errors articulated in this order, substantial evidence does not support the decision to afford only some weight to Dr. Kawamleh's opinions of Taylor's restrictions, and the case must be remanded for reconsideration of his opinion. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). On remand, the ALJ should reevaluate the opinion of the treating cardiologist, Dr. Kawamleh. If the ALJ again determines that his opinion, or some of his opinions, are not entitled to controlling weight, the ALJ should make sure to reinforce that conclusion with specific citations to the record. Additionally, if the ALJ again finds Dr. Kawamleh's opinion is not entitled to controlling weight, the ALJ should address the various factors set forth in 20 C.F.R. 416.927 in assessing the weight to afford Dr. Kawamleh's opinion.

* * *

Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Taylor. She can raise those issues directly with the ALJ on remand.

## Conclusion

For the reasons set forth above, Plaintiff's Motion for summary judgment [DE 22] is GRANTED. The Commissioner of Social Security's final decision is REVERSED and

13

this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: November 30, 2020.

                                      /s/ Philip P. Simon
                                      PHILIP P. SIMON, JUDGE
                                      UNITED STATES DISTRICT COURT